# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| THOMAS MAY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 4:23-cv-00890-MTS |
| | ) |
| ANNE L. PRECYTHE, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

### **MEMORANDUM AND ORDER**

Before the Court is Plaintiff Thomas May's Motion for Leave to Proceed in Forma Pauperis. For the reasons explained below, the Court will grant the Motion, 28 U.S.C. § 1915(a), assess an initial filing fee of five dollars, *id.* § 1915(b)(1), and dismiss Plaintiff's claims, *id.* § 1915(e)(2)(B).

**I.    Initial Partial Filing Fee**

A prisoner bringing a civil action is required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of twenty percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of twenty percent of the preceding month's income credited to the prisoner's account. *Id.* at § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds ten dollars, until the filing fee is fully paid. *Id.*

Plaintiff has submitted his certified account statement from February 10, 2023 to July 31, 2023 as required by § 1915(a)(2).  His statement shows an average monthly deposit of twenty-five dollars.  The Court will assess an initial partial filing fee of five dollars, which is twenty percent of Plaintiff's average monthly deposit.

## II.     Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim on which relief may be granted.  To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679.  The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *accord Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372–73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

In this action, Plaintiff is proceeding pro se; that is, he is representing himself.  The Supreme Court has explained that a document filed pro se is "to be liberally construed," and, specifically, it has explained that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551

U.S. 89, 94 (2007) (per curiam).  The United States Court of Appeals for the Eighth Circuit has explained that giving a complaint "liberal construction" means "that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

While the practice to construe pro se pleadings liberally is a longstanding one within the Eighth Circuit, courts must be careful not to "cross the permissible boundary" to reach claims that a complaint "cannot reasonably be construed" to raise.  *See Bracken v. Dormire*, 247 F.3d 699, 702–03 (8th Cir. 2001); *accord Stone*, 364 F.3d at 914 (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (explaining that even for a pro se plaintiff, the court "will not supply additional facts" nor "construct a legal theory for plaintiff that assumes facts that have not been pleaded")); *see also Davis v. Smith*, 638 F.2d 66, 69 (8th Cir. 1981) (Henley, J., dissenting) (opining that while courts should construe pro se pleadings "liberally in an effort to achieve substantial justice," courts "should not expand the case beyond fair articulation of [a litigant's] claim").

**III.     Background**

This case arises from a prior action filed by another inmate at Missouri Eastern Correctional Center, David Wilson.  *See Wilson v. Precythe*, 4:23-cv-00869-NCC, 2023 WL 4531363, at *1 (E.D. Mo. July 13, 2023).  On July 10, 2023, Wilson filed what he called a class action pursuant to 42 U.S.C. § 1983 on behalf of himself and thirteen additional inmates who were, in one way or another, involved in an incident at the Missouri Eastern Correctional Center on March 23, 2023.  It alleged that prison officials awoke them at 1:00 a.m., bound

them with zip ties, and required them to wait for nearly four hours while the officials searched inmates' cells. Wilson alleged that, in total, 264 inmates were bound and left on the concrete floor for four hours during the night, without word of when the situation would be resolved. Wilson further alleged that, during this time, several medical emergencies occurred.

The Court conducted an initial review of Wilson's complaint and found that he could bring his own claims against the defendants named in his complaint, but he could not bring claims on behalf of the other inmates. The Court severed the thirteen other inmates' actions and opened a separate case for each. This case is Thomas May's action and was randomly assigned to the undersigned. The Court ordered May to file an Amended Complaint because he had not signed the purported class action complaint, see Federal Rule of Civil Procedure 11(a), and because the purported class action complaint "allege[d] violations of the rights of a group of inmates as a whole, rather than describing the specific constitutional violations alleged by each plaintiff individually," Doc. [3] (2023 WL 4743239). The Court explained to May the need to provide a short and plain statement of the factual allegations supporting his claim and that he must establish the responsibility of each separate defendant for harming him. *Id.* On August 15, 2023, Plaintiff filed his Amended Complaint and application to proceed in the district court without prepayment of fees and costs.

### May's Amended Complaint

Plaintiff's Amended Complaint brings an action pursuant to 42 U.S.C. § 1983 against Defendants for deliberate indifference to medical needs arising out of the events of March 23, 2023. As Defendants, he names Anne L. Precythe (Director, Missouri Department of Corrections (MDOC)); Gregory Hancock (Warden, Missouri Eastern Correctional Center (MECC)), and Unknown McDaniels (Sergeant, MECC). His Amended Complaint, like the

original complaint, expressly indicates he sues Defendant Precythe in her individual capacity and Defendants Hancock and McDaniels in their official capacities.

Plaintiff states that on March 23, 2023, at 1:00 a.m., prison officers awoke him and his cellmate by knocking on the cell window.  Officers ordered Plaintiff and his cellmate to place their dog in its kennel and step outside.  Once outside, Plaintiff and his cellmate were told to turn around as officers cuffed their hands with zip ties.  Plaintiff alleges that the officers did not ask if Plaintiff had any medical issues or if the restraints were too tight.  Plaintiff says he attempted to explain to the officers that he is disabled and that the restraints were too tight, causing him pain.  He asked if the restraints could be loosened or if the officers could move them to the front of his body.  The officers told him to be quiet and that it would not take long.

Plaintiff explains he has a long history of arthritis, degenerative disc disease, spinal stenosis, and osteoarthritis and had undergone two previous back surgeries.  He had been on Social Security disability prior to his incarceration.  At around 2:00 a.m. that day, Plaintiff walked to the front of the wing to report to an unnamed officer that he was in severe pain.  He asked her if she could loosen the restraints because they were cutting into his wrist.  He also informed her that his right shoulder hurt and that he had severe back pain.  The officer told Plaintiff that there was nothing she could do.  Plaintiff asked the officer to call a sergeant, so Plaintiff could speak to one, but the officer told Plaintiff the sergeants were busy.  The officer directed Plaintiff to sit back down and that "it would not be much longer."

Forty-five more minutes passed, and Plaintiff says his pain grew more intense.  He felt his shoulder pop out of its socket, he says.  He informed the officer that his pain was increasing and that he was having chest pain and difficulty breathing.  The officer called for a sergeant, but no sergeant came.  Plaintiff asked the officer again for a sergeant or to call for medical

personnel.  The officer instructed Plaintiff to sit down by the bathroom steps and wait.  At this point Plaintiff was suffering severe shoulder and chest pain, labored breathing, and swollen purple hands.  He had been restrained for an hour and forty-five minutes.

After another forty-five minutes had passed, at 3:30 a.m., Sergeant McDaniels came to see Plaintiff.  At this point, Plaintiff states that he could not feel his hands, his chest was tight, and he began to become seriously afraid and anxious.  Though Plaintiff states he feared he would die, Sergeant McDaniels told Plaintiff to go and sit down by his cell and that Plaintiff would "go to the hole" if he did not listen.  Sergeant McDaniels told Plaintiff that he could not loosen or remove the zip ties, and that Plaintiff would have to wait longer.

At some point between 3:30 a.m. and 4:00 a.m., Plaintiff asked another inmate, David Wilson, to find Plaintiff some help.  Plaintiff states he "started to lose consciousness" and "literally feared" he was going to die.  Plaintiff says he did indeed lose consciousness and next remembers being on a medical board with people asking him questions.  Medical personnel were asking him to control his breathing, but Plaintiff continued to slip in and out of consciousness and could not comply with the directives.

Plaintiff was taken to the medical unit, where he was released at 10:30 a.m. without having seen a doctor.  He says his shoulder "popp[ed] back into place" and that he experienced "instant relief after the zip ties were cut off."  He states that no one ever provided him with any explanation as to what happened to him.  He was told simply to return to his housing unit.  Because he had no shoes, socks, or clothing, a sergeant gave him a pair of shower shoes for the trip.  For relief, Plaintiff seeks $250,000 "for punitive or actual or loss-expectation damages."

**IV.     Discussion**

Based on a careful review and liberal construction of the allegations of Plaintiff's Amended Complaint, the Court will dismiss this action for failure to state a claim on which relief may be granted.

**A.     Defendant Precythe**

Plaintiff fails to state a claim in the Amended Complaint against Defendant Precythe because he makes no allegations against her. Plaintiff lists Precythe in the caption and identifies her as the Director of MDOC, but he in no way shows he is entitled to relief against her. Simply placing Defendant's name in the caption is not enough to establish her responsibility. *See Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (per curiam); *see also Butler v. Bank of Am., N.A.*, 690 F.3d 959, 961 (8th Cir. 2012). And the mere fact that Director Precythe is a supervisory official does not make her liable under 42 U.S.C. § 1983 for her subordinate's actions. *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) ("Government officials are personally liable only for their own misconduct."); *Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution."). Thus, Plaintiff failed to state a claim against Defendant Precythe on which relief may be granted.

**B.     Defendants Hancock[1] and McDaniels**

Plaintiff's claims against Defendants Hancock and McDaniels fail because Plaintiff expressly and unambiguously chose to sue them in their official capacities and not their

---

[1] Like Defendant Precythe, Plaintiff makes no allegations against Defendant Hancock. Plaintiff's claims against him therefore would fail for the same reason Plaintiff's claims against Defendant Precythe fail.

individual capacities.  In an official capacity claim against a government employee, the claim is actually "against the governmental entity itself."  *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017); *accord Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("A suit against a public employee in his or her official capacity is merely a suit against the public employer.").  Here, because Defendants Hancock and McDaniels are employees of the state of Missouri, naming them in their official capacities is equivalent to naming the state of Missouri.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Plaintiff's choice poses two problems for him.[2]

*First*, the Eleventh Amendment bars § 1983 damages claims against the state of Missouri.  *Williams v. Missouri*, 973 F.2d 599, 599 (8th Cir. 1992) (per curiam).  It bars them even when a plaintiff frames the claim as one against employees of the state of Missouri acting in their official capacities.  *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997); *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016); *see also* C. Wright & A. Miller, 13 Fed. Prac.

---

[2] The Court cannot attempt to revive Plaintiff's claims against these Defendants by ignoring his choice to bring the claims against them in their official capacities.  Indeed, even if Plaintiff merely were silent on the capacity in which he sued them, the outcome would be the same here.  The Court of Appeals for the Eighth Circuit has held that, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings."  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (quoting *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)).  When a plaintiff fails to do so, a district court will "assum[e] that the defendant is sued only in his or her official capacity."  *Id.*  This assumption seemingly applies even to actions, like this one, brought by pro se litigants.  *See, e.g.*, *Taylor v. Roper*, 83 F. App'x 142, 143 (8th Cir. 2003) (per curiam); *Gibson v. Hadzic*, 4:22-cv-00163-SPM, 2023 WL 6214856, at *3 (E.D. Mo. Sept. 25, 2023); *Bird v. South Dakota*, 3:11-cv-03012-RAL, 2012 WL 2126950, at *2 (D.S.D. June 11, 2012); *cf. Baker v. Chisom*, 501 F.3d 920, 926 (8th Cir. 2007) (Gruender, J., concurring in part and dissenting in part) (describing this capacity rule as having "mutated into a bright-line presumption").  Thus, here, where Plaintiff was not merely silent on Defendants' capacities but expressly and unambiguously chose their *official* capacities, construing his Amended Complaint any other way would cross the permissible boundary to reach claims that his Amended Complaint simply does not raise.

& Proc. § 3524.2 (3d ed.) (explaining the Eleventh Amendment "bar[s] a suit if the state is the real party in interest, even if it is not a named defendant").

*Second*, even if the state of Missouri would waive its sovereign immunity in this action, § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights," *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008), but "neither [Missouri] nor its officials acting in their official capacities are 'persons' under § 1983," *Will*, 491 U.S. at 71; accord *Murphy*, 127 F.3d at 754.

For these reasons, Plaintiff's official capacity claims against Defendants Hancock and McDaniels are subject to dismissal because they seek monetary relief against Defendants who are immune from such relief, see 28 U.S.C. § 1915(e)(2)(B)(iii), and fail to state a claim on which relief may be granted, see *id.* § 1915(e)(2)(B)(ii).

## CONCLUSION

Because the Court has concluded that Plaintiff's Amended Complaint fails to state a claim on which relief may be granted, the Court must dismiss this action. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that "the court shall dismiss the case at any time if the court determines that" it "fails to state a claim on which relief may be granted").

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Proceed in Forma Pauperis, Doc. [5], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial filing fee of five dollars ($5.00) within thirty (30) days of the date of this Order. Plaintiff shall make his remittance payable to "Clerk, United States District Court," and include upon it: (1) his name; (2) his

prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FINALLY ORDERED** that Plaintiff's claims are **DISMISSED**. *See* 28 U.S.C. § 1915(e)(2)(B).

An Order of Dismissal dismissing this action will accompany this Memorandum and Order.

Dated this 9th of January 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE